COMMONWEALTH *vs.* VERNON DAY (and seven companion cases[1]).
July 22, 1976. 1. White, a witness to the robberies, testified on direct
examination that he had met Day on various occasions prior to the
robberies in the course of athletic and social events; he positively iden-
tified Day as the individual who had shot one of the robbery victims.
It appeared from White's cross-examination that he had been unable
to give the police Day's name when he had, within hours of the rob-
beries, identified a mugshot of Day as being a likeness of the gunman.
White had shortly thereafter had a conversation with someone "who
wasn't a police officer", who had given White Day's name, which White
had then given the police. The judge's unsolicited refusal to order
White to disclose the name of his conversant did not result in an
abridgement of Day's rights under the Sixth Amendment to the Con-
stitution of the United States (see *Pointer* v. *Texas,* 380 U. S. 400, 403-
406 [1965]) or under art. 12 of the Declaration of Rights of the Massa-
chusetts Constitution. It did not appear that White's conversant had
been a witness to the robberies or the shooting, that he was a police
informer (see *Commonwealh* v. *Swenson,* 368 Mass. 268, 275-278
[1975]), or that either he or his identity was in any way important to
the conduct of Day's defense. He was no more a "witness" within the
meaning of either constitutional provision than was the unidentified
police officer who had originally implanted Day's name or identifying
number on the mugshot which White had already selected at the police
station. 2. The judge did not err in denying Hill's motion for a directed
verdict, which was grounded on the proposition that the evidence was
insufficient to warrant a finding that Hill had been the second par-
ticipant in the robberies and shooting. We pass White's evasive and
equivocal answers to the prosecutor's and the judge's direct questions
concerning the identity of the second participant; it is enough to note
that White never said that Hill was not the man in question. We con-
centrate instead on White's other testimony, given in unguarded mo-
ments following his having been declared a hostile witness. White
testified that he had also seen Hill on occasions prior to the robberies.

---

[1] Commonwealth *vs.* Vernon Day (three indictments) and Common-
wealth *vs.* John S. Hill (four indictments).

Rescript Opinions.

He gave an affirmative answer to a question as to whether it was true that Hill was the individual who had taken the wallet of one of the robbery victims. White also testified that Hill's beard, moustache and sideburns (as observed by him in the court room) were different from what he had observed on the date of the robberies; on "the day of the incident" Hill had not been wearing the platform shoes he was wearing in the court room ("he wasn't that tall then"). Finally, the foregoing testimony was bolstered (see *Commonwealth* v. *Walker,* 370 Mass. 548, 563-564 [1976]) by undisputed evidence (no longer objected to) that five days after the robberies White had made a photographic identification of Hill from among mugshots exhibited to him by the police. The jury could properly consider that identification as substantive evidence of Hill's guilt. *Commonwealth* v. *Torres,* 367 Mass. 737, 739 (1975). *Commonwealth* v. *Swenson,* 368 Mass. at 272.

*Judgments affirmed.*

*Dyanne Klein Polatin,* for the defendants, submitted a brief.

*Thomas J. Mundy, Jr.,* Assistant District Attorney, for the Commonwealth.